UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANGELA D. SCHMALTZ, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:19-CV-414 NAB |
| ANDREW M. SAUL[1], Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Angela D. Schmaltz's appeal regarding the denial of disability insurance benefits and supplemental security income under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 11.] The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.      Issue for Review**

Schmaltz presents one issue for review. Schmaltz asserts that the ALJ failed to properly evaluate the opinion evidence of her treating physician and treating nurse practitioner. The

---

[1] At the time this case was filed, Nancy A. Berryhill was the Acting Commissioner of Social Security. Andrew M. Saul became the Commissioner of Social Security on June 4, 2019. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Andrew M. Saul for Nancy A. Berryhill in this matter.

Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

## II.     Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the

criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004).

The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003). "In this substantial-evidence determination, the entire administrative record is considered but the evidence is not reweighed." *Byes v. Astrue*, 687 F.3d. 913, 915 (8th Cir. 2012).

### III.   DISCUSSION

Schmaltz alleged that she was unable to work due to degenerative disc disease, numbness in hands and feet, carpal tunnel syndrome in both hands, tennis elbow in both elbows, severe headaches, weakness in arms and legs, hurt in the whole body, severe pain in the upper, mid, and

3

lower spine, spondylosis, and arthritis throughout the back. (Tr. 227.) Before she stopped working in 2016, she had worked as a sales manager, sales associate, assistant manager, and licensed cosmetologist.

**Evaluation of Medical Opinion Evidence**

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and what the claimant can still do despite impairments and physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(2),416.927(a)(2)[2]. All medical opinions, regardless of the source, are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. *Hacker*, 459 F.3d at 937. "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular

---

[2] Many Social Security regulations were amended effective March 27, 2017. Per 20 C.F.R. § 416.927, the court will use the regulations in effect at the time that this claim was filed on October 18, 2016.

weight given to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000).

### Dr. Xiaohui Fan

Dr. Xiaohui Fan treated Schmaltz for pain management in 2016 and 2017. (Tr. 439-56.) Schmaltz sought pain management for her neck and back pain. Dr. Fan diagnosed Schmaltz with cervical spondylosis with right C5-C6 foraminal stenosis and right greater than left radicular pain, lumbar spondylosis and facet arthropathy, and muscle spasms of the neck. (Tr. 440, 448, 452, 454.) Her physical examinations indicated a normal or non-antalgic gait and slight weakness in her left grip. (Tr. 440, 443, 447, 451.) Examination of her cervical spine indicated reduced lordosis curve, moderate to severe tenderness, greater on the right, slightly restricted extension, and positive Spurling's test on the right side. (Tr. 440, 443, 447-78, 451.) Examination of the lumbar spine indicated normal curvature, moderate tenderness at midline at bilateral paraspinals at lower left spine, and range of motion limited by pain. (Tr. 443, 448, 451-52, 454.) Her straight leg raise examinations were negative. (Tr. 452, 454.) Dr. Fan gave Schmaltz a bilateral sacroiliac joint injection and two cervical epidural steroid injections to relieve her pain. (Tr. 445-46, 449, 450.) Schmaltz complained that the cervical epidural steroid injections caused more pain and the sacroiliac injection helped 50% for weeks. (Tr. 440, 442-43, 448,452, 454.) Dr. Fan instructed Schmaltz to participate in activity as tolerated. (Tr. 448, 452, 454.)

Dr. Fan also relied on objective medical findings in his treatment notes. A September 2016 MRI of Schmaltz's lumbar spine showed spondylosis without central canal or neural foraminal stenosis and L5-S1 facet arthropathy without subluxation or neural foraminal encroachment. (Tr. 322.) It also showed abnormal C6 vertebral marrow signal on sagittal full length localizer. (Tr. 322.) An October 2016 MRI of Schmaltz's cervical spine indicated multilevel spondylosis most

5

evident from C4 to C5 through C6-C7, no evidence of central canal stenosis, and moderate to severe right C5-C6 foraminal stenosis.  (Tr. 321.)  The October 2015 EMG nerve conduction study results indicate mild bilateral carpal tunnel syndrome and some cervical radiculopathy of C8-T1 level on the right side.  (Tr. 299.)  Schmaltz had right carpal tunnel release surgery, right elbow lateral tenotomy, and short arm splint application on November 4, 2015.  (Tr. 310-12.)

On April 4, 2017, Dr. Fan wrote in his treatment notes that "in terms of functional status" Schmaltz had reduced range of motion on her cervical and lumbar spines, could not lift or carry less than 10 pounds, cannot reach overhead, or bend frequently, cannot sit or stand greater than 15 minutes each time or 2 hours per day. (Tr. 440.)  He also wrote, "It is near impossible for her to hold any meaningful jobs."  (Tr. 440.)  Dr. Fan suggested that Schmaltz re-consider cervical spine surgery after she obtains insurance again.  (Tr. 440.)

The ALJ gave Dr. Fan's functional analysis little weight, because "it appears to be based on the claimant's subjective complaints rather than Dr. Fan's examination findings within the same visit." (Tr. 24.)  The ALJ also noted that Dr. Fan's comment about meaningful jobs is given little weight, because the evidence does not show that he has the vocational expertise to opine about what jobs are available.  (Tr. 24.)  Finally, the ALJ noted that whether a claimant is disabled is an ultimate conclusion reserved to the Commissioner.  (Tr. 24.)

Schmaltz contends that the ALJ cited no basis to indicate that Dr. Fan's opinion was based on her subjective complaints.  Schmaltz states that Dr. Fan's treatment notes and her MRIs of the cervical and lumbar spines and the nerve conduction study support his opinion.  Further, Schmaltz contends that the ALJ failed to recognize that Dr. Fan "clearly believed Plaintiff was suffering from severe neck pain."  Schmaltz noted that Dr. Fan indicated that Schmaltz should consider cervical surgery.

6

Based on the Court's review of the evidence in the record as a whole, the Court finds that the ALJ did not err in his analysis of Dr. Fan's opinion. Using the factors in 20 C.F.R. §§ 404.1527(c), 416.927(c), recognized Dr. Fan was a treating physician who treated Schmaltz for pain for less than a year. Schmaltz saw multiple medical practitioners at the same time. The neurologists that she visited did not recommend surgery. They also recommended more conservative treatment, including that she stop smoking.

On November 7, 2016, Dr. Neill Wright wrote, "Her 2016 MRI showed only right C5/C6 foraminal stenosis, which does not explain her current constellations of symptoms." (Tr. 329.) Dr. Wright also opined,

> I do not see a surgical intervention for her current constellation of symptoms. Although she did not have a good response to the injection in 2014 by Dr. Rahimi, we should try this again to see what is coming from her neck versus other areas. I would recommend a right C5/6 foraminal steroid injection.

(Tr. 329.) Dr. Wright gave this opinion after reviewing Schmaltz's MRIs and treatment records. He agreed that the films showed "mild degenerative changes." Dr. Wright acknowledged that during her visit with him, she had a very "antalgic posture and movements" and "pain to range of motion and/or palpation of the spine, joints, and muscles." (Tr. 332.) He also noted that the neurological examination and radiograph studies were "unremarkable" and "nothing to account for her severity of pain and disabilities." (Tr. 332.)

Schmaltz first visited Dr. Andrew Youkilis, a neurologist in 2014. (Tr. 379-82.) Dr. Youkilis recommended that Schmaltz stop smoking. (Tr. 381.) He discussed several options with her, including surgery, but she stated that she wanted conservative treatment. (Tr. 381.) He then referred her to Dr. Rahimi. Schmaltz returned to Dr. Youkilis for consultation in November 2016. Schmaltz complained of neck pain and right arm pain and numbness. (Tr. 375.) On physical

7

examination, Dr. Youkilis observed loss of normal cervical lordosis, reduced range of motion on extension and HT to the right, and Spurling's sign was positive on the right.  (Tr. 377.)  Dr. Youkilis observed no pain to palpation, no signs of impingement, and normal passive and active range of motion in her shoulder.  (Tr. 377.)  Dr. Youkilis recommended that she quit smoking and discussed with her the role that nicotine plays in degenerative conditions of the spine.  He sent her for an electrodiagnostic ("EMG") study of her bilateral upper extremities.  (Tr. 377-78.)  The EMG study indicated no electrodiagnostic evidence of cervical radiculopathy on the right or left, left median neuropathy at the wrist, mild in degree, and "no electrodiagnostic abnormalities were found that correlate with the patient's right upper extremity symptoms."  (Tr. 383-87.)   Dr. Youkilis examined Schmaltz again on December 12, 2016.  (Tr. 371-74.)  He reviewed the December 2016 EMG and nerve conduction study results.  (Tr. 373.)  Dr. Youkilis opined that Schmaltz had neck pain of multifactorial etiology.  (Tr. 373.)  He diagnosed her with cervical spondylosis and carpal tunnel syndrome.  (Tr. 373.)  He again recommended that she stop smoking.  (Tr. 373.)   He also advised that he "was not convinced that surgical intervention would be beneficial" based on the unpredictability of surgery for neck pain and the absence of benefit from a previous selective nerve root block.  (Tr. 373.)

Additionally, Dr. Aloka Amarakone, neurologist, provided an assessment of Schmaltz on August 30, 2017.  (Tr. 388-403.)   He diagnosed Schmaltz with myofascial muscle pain, osteoarthritis of the cervical spine, multiple joint pain and recurrent occipital headache.  (Tr. 394.)  Her neurological examination was within normal limits.  (Tr. 391.)  Dr. Amarakone suggested that Schmaltz began taking Gabapentin and take up gentle massage/yoga/gradual mobilization.  (Tr. 394.)  Dr. Amarakone also evaluated Schmaltz in October 2017.  (Tr. 404-16.)  Schmaltz reported that she discontinued the Gabapentin because it made her forgetful, out of touch, and moody.  (Tr.

8

405.) She also reported that her symptoms had worsened and she "almost living in her bed for the last two months." (Tr. 405.) The October 2017 examination focused on Schmaltz's mental health. Dr. Amarakone prescribed her medication for sleep assistance, depression, fibromyalgia, and pain. (Tr. 409-10.)

In summary, Dr. Fan's opinion was not consistent with the neurologists who treated Schmaltz. More weight is given to the opinion of a specialist about medical issues related to his specialty than the opinion of a source who is not a specialist. *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). Further, the issue of whether Schmaltz could sustain gainful employment is an issue reserved to the Commissioner. 20 C.FR. §§ 404.1527(e)(1), 416.927(e)(1); *see also Brown v. Astrue*, 611 F.3d 941, 952 (8th Cir. 2010). Therefore, the ALJ did not err in giving little weight to Dr. Fan's opinion.

### Nurse Practitioner Julie Koppels McTearnen

Next, Schmaltz contends that her nurse practitioner's opinion should have received more weight. Schmaltz began receiving care from Nurse Practitioner Julie Koppels McTearnen in September 2016. The treatment records go through February 2018. McTearnen served as Schmaltz's primary care provider. McTearnen treated Schmaltz for low back pain, neck pain, abdominal pain, and anxiety. (Tr. 340-63, 420-34.) In the treatment notes, McTearnen observed that Schmaltz exhibited a normal gait until April 2017. Schmaltz demonstrated decreased range of motion on flexion and extension of the neck, pain with range of motion in back flexion and extension, positive right Spurling's sign, and touch to palpation on the cervical, thoracic, and lumbar spines. She demonstrated a positive straight leg raise on the right beginning in January 2018. McTearnen reviewed the MRIs and x-rays in the record.

9

McTearnen prepared a Medical Assessment of Ability to Do Work Related Activities dated February 5, 2018.  (Tr. 420-22.)  She opined that Schmaltz could not engage in sustained lifting and carrying, standing and walking, or sitting.  (Tr. 420.)  She opined that Schmaltz could not use her upper extremities frequently, her pain level was constant, and she would need more than 2 hours of rest in an 8 hour workday.  (Tr. 420.)  McTearnen opined that Schmaltz's subjective complaints were reasonably consistent with the objective findings of her MRI results and X-rays.  (Tr. 421.)  McTearnen wrote that her opinion was based on Schmaltz's subjective complaints, the MRI indicating cervical spondylosis with neuroforaminal narrowing, and her failure to respond to physical therapy and pain management.  (Tr. 421.)

The ALJ gave McTearnen's opinion little weight stating it was not supported by medical evidence in the record, including her own treatment notes.  The ALJ also noted that McTearnen's opinion that Schmaltz could not carry any weight contradicted Schmaltz's statements that she could shop and lift and carry some items at the very least.  The ALJ also noted that McTearnen was not an acceptable medical source and not a specialist.  Schmaltz contends that the ALJ should have given more weight to McTearnen's opinion, because she treated Schmaltz as part of a treatment team.

McTearnen is a nurse practitioner and under the rules in effect at the time Schmaltz's claim was filed she was an "other source" and therefore under Social Security regulations is not an "acceptable medical source" who can be considered a "treating source."  *See* 20 C.F.R. §§ 404.1502, 404.1513(a), 416.902, 416.913(a); *see also* SSR 06–03p, 71 Fed.Reg. 45,593 (Aug. 9, 2006). Nurse practitioners' opinions are considered an "other" medical source of evidence.  *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).  "Evidence from other medical sources is evaluated based on various factors used to evaluate acceptable medical sources including the examining or

10

treatment relationship, length of the relationship, frequency of examination, supportability, and consistency. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). A nurse practitioner can be recognized as a treating source though not an acceptable medical source, when engaged in a team approach to care that included an acceptable medical source. *See Blackburn v. Colvin*, 761 F.3d 853, 859 (8th Cir. 2014); *LaCroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006); *Shontos v. Barnhart*, 328 F.3d 418, 426-27 (8th Cir. 2003).

Based on a review of the evidence in the record as a whole, the Court finds that the ALJ did not err in evaluating McTearnen's opinion. Although the treatment notes indicate that Dr. Roberts supervised McTearnen, the functional evaluation was signed solely by McTearnen. Therefore, McTearnen's opinion does not have to be considered as part of a treatment team. Regardless of how the ALJ identified McTearnen, the standard in evaluating McTearnen's opinion remains the same, 20 C.F.R. §§ 404.1527(c), 416.927(c). McTearnen's opinion listed substantial limitations that were not supported in her treatment notes, objective medical evidence, and the opinions of the specialists who treated Schmaltz. Schmaltz alleged disabling pain. McTearnen's opinion stated that Schmaltz could not lift or carry, stand or walk, or sit on a sustained basis. (Tr. 466.) McTearnen also stated that Schmaltz could not use either of her upper extremities on a frequent basis. (Tr. 466.) McTearnen's treatment notes, the treatment notes of Schmaltz's other providers, and the objective MRIs and x-rays do not indicate such substantial limitations. The treatment notes McTearnen and the specialists prepared all recommended conservative treatment including steroid injections, gentle massage/yoga/gradual mobilization, alternating cold and heat packs, weight loss, swimming, range of motion exercises, pool therapy, and stopping smoking. (Tr. 329, 348, 373, 377, 394, 478, 482, 486.) *See e.g. Moore v. Astrue,* 572 F.3d 520, 524-25 (8th Cir. 2009) (appropriate for ALJ to consider conservative or minimal treatment). It would be

expected that her treating providers would recommend more substantial treatment if Schmaltz's limitations and pain were disabling. It would also be expected that the other providers' physical examination notes would reflect substantial limitations. Therefore, the Court finds that the ALJ's evaluation of McTearnen's opinion was supported by substantial evidence in the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**.  [Docs. 1, 18.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Andrew M. Saul for Nancy A. Berryhill in the court record of this case.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 3rd day of August, 2020.